UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMORY ZIPPERER | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civil Action No. 03-12379 MLW |
| vs. | ) |
| | ) |
| RAYTHEON COMPANY, INC. | ) |
| | ) |
| Defendant. | ) |
| | ) |

## PLAINTIFF EMORY ZIPPERER'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

### Introduction

Plaintiff Emory Zipperer ("Zipperer") filed an action for negligence, equitable estoppel, and negligent misrepresentation against Defendant Raytheon Company, Inc. ("Raytheon") in connection with the Defendant's negligent maintenance of employment records concerning Zipperer's years of employment with Raytheon and its affiliates and successors. Raytheon now moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure contending that Zipperer's claims for negligence, equitable estoppel and negligent misrepresentation are preempted by ERISA, the Employee Retirement Income Security Act of 1974 ("ERISA"), and further, that Zipperer cannot assert any cognizable claim for damages should his complaint be construed to include an ERISA claim. Zipperer opposes Raytheon's motion as his claims do assert colorable claims that do not fall within the preemption provision of ERISA.

## Relevant Facts

The relevant facts gleaned from the Plaintiff Zipperer's complaint are as follows:

The Plaintiff Emory Zipperer ("Zipperer") is an individual with a permanent address of 149 Rainbow Drive, No. 4996, Livingston, Texas. The Defendant Raytheon Company ("Raytheon") is a corporation organized under the laws of the Commonwealth of Massachusetts having a principal place of business at 141 Spring Street in Lexington, Massachusetts. Emory Zipperer began working for United Engineers & Constructors, Inc. ("UE&C"), a wholly owned subsidiary of Raytheon, on November 20, 1972 as a field engineer in the nuclear power division.

On or about January 1, 1975, Zipperer began participating in the UE&C Retirement Plan. On or about November 2, 1990, Zipperer began working for another Raytheon subsidiary, Raytheon Services, Nevada ("RSN") at the request of his employer, UE&C. RSN participated in atomic testing and chemical weapons disposal programs at sites in Nevada.

Upon information and belief, Raytheon formed RSN in order to protect itself from the potential liabilities associated with atomic testing and chemical weapons disposal. When Zipperer began working for RSN no monies were transferred from the UE&C retirement plan to the RSN plan since Zipperer was still a Raytheon employee and both plans were part of the Raytheon Master Trust Fund. Although both plans were administered by Raytheon Benefit Center, the RSN Pension Plan assets consisted of funds paid by the U.S. Department of Energy while the UE&C plan assets were from proceeds of UE&C.

According to the Raytheon Benefit Center, Zipperer's service date with RSN was adjusted to reflect his prior service with UE&C. On October 4, 1993, Mr. Zipperer separated from his employment at RSN and was rehired at RE&C, a successor to UE&C, on November 29, 1993. RE&C immediately credited Zipperer with his prior years of service with UE&C for the purpose of calculating his pension benefits.

On or about December 30, 1995, Bechtel Nevada through a competitive bid process replaced RSN as a contractor for the United States Department of Energy ("DOE"). RSN was a specialty company created by Raytheon solely for the purpose of administering work for the DOE, Nevada Operations. The Raytheon Benefit Center has represented that as of that date, the RSN pension trust fund monies were transferred to the Bechtel Nevada Employees Retirement Plan.

Apparently when RSN was succeeded by Bechtel, RE&C was not notified by Raytheon and RSN that Zipperer's entire vested RSN benefit which included his UE&C benefit was being transferred to Bechtel. Accordingly, when RE&C was sold to Washington Group International ("WGI") on July 7, 2000, Raytheon reported this incorrect, overstated benefit transferred to the Raytheon Benefits Center database. None of the Raytheon pension plans were amended to reflect the asset transfers to the Bechtel pension plan. As of the date of the sale of RE&C to WGI, Zipperer became an employee of WGI.

On or about December 27, 1999, Zipperer completed a Request for Retirement Calculations Form and sent it to W. Scott Bishop, the Pension Administrator for RE&C. On that Form, Zipperer indicated that he had prior service with United Engineers & Constructors, Inc. and Raytheon Company. On the Form, he requested that his retirement

3

benefits be calculated as of April 1, 2000. On or about February 16, 2000, RE&C printed out a Computation of Retirement Benefits for Zipperer. According to the Computation of Benefits, Zipperer was told that he could expect to receive $1,100.17 monthly if he chose a single life annuity with no rights of survivorship; $1,063.11 monthly if he chose 10 year certain and continuous; or $980.55 monthly if he chose joint and survivor annuities.

Based on the information Zipperer received from the RE&C Pension Administrator, Zipperer and his wife Mary each decided to retire, purchase a motor coach and travel throughout the United States. On or about September 30, 2000, Zipperer retired from his senior level job as a Project Controls Manager for Washington Group International ("WGI") which had an annual salary of $107,484. Mary Zipperer retired from her job as a Senior Examiner for United National Insurance Co. At that time, her annual salary was $69,076. Specifically, Emory Zipperer retired from WGI, as it purchased RE&C in July, 2000 on or about September 30, 2000.

Shortly thereafter, Zipperer began receiving monthly pension checks from Raytheon in the amount of $840.64. In June 2001, Zipperer received a letter from W. Scott Bishop the Raytheon Benefit Center informing him that his pension benefits had been incorrectly overstated, and that, in actuality he was entitled to receive only $400.06 per month. Zipperer's appeal of the decision concerning his pension benefits was denied and he has exhausted all internal appeal procedures.

In Count I of his Complaint claiming negligence, Zipperer alleges that Raytheon owed a duty to him to properly maintain records and information concerning his retirement plan. Raytheon breached its duty to Zipperer by failing to properly maintain his employment records. As a result of Raytheon's breach, Raytheon's Benefit Center

had incorrect information in its database concerning Zipperer's dates of employment with Raytheon and its affiliates and his benefits. As a result of Raytheon's breach, Raytheon's Benefit Center furnished Zipperer with incorrect information concerning the amount of his monthly retirement benefits. Zipperer, in turn, relied on the incorrect information to his detriment when he made the decision to retire from his position with Raytheon's successor WGI. As a result of Raytheon's negligence, Plaintiff has suffered damage including his present lost wages, future income and attorneys' fees and costs.

In Count II of his Complaint, Plaintiff files a claim for equitable estoppel alleging that Zipperer reasonably relied upon incorrect information given to him by W. Scott Bishop of the Raytheon Benefit Center concerning the amount of Zipperer's monthly pension benefits upon his retirement. Raytheon had reason to know that Zipperer would rely upon such information in making the decision when to retire. Zipperer relied upon such information to his detriment giving up his job at WGI, giving up his home, and deciding to travel.

In Count III of his Complaint Plaintiff files a claim for negligent misrepresentation alleging that Defendant owed Plaintiff a duty to furnish correct information to him. Defendant did not exercise reasonable care in the provision of information to Zipperer concerning the amount of his pension benefit upon retirement. Defendant Raytheon negligently provided false information to Zipperer concerning the amount of his pension benefit upon retirement. Zipperer reasonably relied upon the false information. As a result of Raytheon's negligent misrepresentation, Plaintiff has suffered damage including his present lost wages, future income and attorneys' fees and costs.

**Argument**

I.    **THIS COURT SHOULD DENY DEFENDANT RAYTHEON'S MOTION FOR JUDGMENT ON THE PLEADINGS AS THE PLAINTIFF EMORY ZIPPERER'S CLAIMS ARE NOT PREEMPTED BY ERISA AND ZIPPERER HAS ALLEGED FACTS, IF PROVEN AT TRIAL, WOULD ENTITLE HIM TO JUDGMENT IN HIS FAVOR.**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "[N]othing in the text of Rule 12(c) compels [a] court to apply any particular standard when deciding whether to grant or deny a motion for judgment on the pleadings," *NEPSK Inc. v. Town of Houlton*, 283 F.3d 1, 8, (1st Cir. 2002). Nonetheless, the First Circuit Court of Appeals has consistently upheld the long-standing principle that judgment on the pleadings, "may not be entered unless it appears beyond a doubt that the nonmoving party can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Feliciano v. Rhode Island*, 160 F.2d 780, 788 (1st Cir. 1998); *Gaskell v. Harvard Coop. Soc'y*, 3 F.3d 495, 497-98 (1st Cir. 1993); *Int'l Paper Co. v. Jay*, 928 F.2d 480, 482 (1st Cir. 1991). Accordingly, the standard for evaluating a motion for judgment on the pleadings is "essentially the same as the standard for evaluating a Rule 12(b)(6) motion." *Id.* (citations omitted). The court must accept all factual allegations in the complaint as true and draw all reasonable inferences from such allegations in the plaintiff's favor. *See Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B.*, 958 F.2d 15, 17 (1st Cir. 1992).

**A. ZIPPERER'S CLAIMS ARE NOT PREEMPTED BY ERISA.**

ERISA is a comprehensive statutory scheme that governs employee benefit plans. *Carpenter Local Union No. 26 v. United States Fid. & Guar. Co.*, 215 F.3d 136, 139 (1st Cir. 2000). "ERISA's substantive protections are intended to safeguard the financial

integrity of employee benefit funds, to permit employee monitoring of earmarked assets, and to ensure that employer's promises are kept." *Belanger v. Wyman-Gordon Co.* 71 F.3d 451, 453-54 (1st Cir. 1995). As part of its substantive protection, ERISA contains a preemption clause in Section 514 providing that that it "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis supplied). A cause of action "relates to" an ERISA plan when the court must evaluate and interpret the terms of the ERISA-regulated plan in order to determine liability under the state law. *Hampers v. W.R. Grace & Co.*, 202 F.3d 44, 52 (1st Cir. 2000); *Nicholson v. Prudential Ins. Co. of America* 235 F.Supp. 2d 22, 25 (D. Me. 2003). Accordingly, "[a]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Aetna Health, Inc. v. Davila*, 124 S.Ct. 2488, 2497, ___ U.S. ___ (2004).

In its Motion For Judgment On The Pleadings, Defendant Raytheon does not contend that Zipperer fails to allege the elements of his claims for negligence, equitable estoppel and negligent misrepresentation but rather claims that Zipperer's claims are preempted by ERISA. The purpose of ERISA may be to ensure "a 'careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans,'" *Aetna*, 124 S.Ct. at 2499, quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 55 (1987). ERISA's purpose will not be frustrated by the prosecution of the Plaintiff Zipperer's claims. Plaintiff's claims do not involve any wrongdoing on the part of a plan administrator or any interpretation of the Plan itself. Indeed, unlike the Plaintiff's claims in *Mauser v. Raytheon Company Pension Plan For*

*Salaried Employees*, 239 F.3d. 51 (1st Cir. 2001), Zipperer's claims are lodged not against the Raytheon Company Pension Plan For Salaried Employees but instead are asserted entirely against the Raytheon Company for negligently maintaining records and failing to forward correct personnel information to the Raytheon Benefits Center.  Any potential recovery on the part of the Plaintiff will not involve compensation from any employee benefit plan but rather will involve recovery against the corporation itself.

Moreover, the facts underlying Zipperer's claims are entirely different from the facts of *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549 (1987), in which the United States Supreme Court deemed that the common law causes of action in plaintiff's complaint were based on alleged improper processing of a claim for benefits under an ERISA plan, and therefore, were preempted by ERISA.

Instead, the instant case more closely resembles cases in which courts have determined that there is no ERISA preemption for common law claims. *See Morningstar v. Meijer, Inc.*, 662 F.Supp. 555 (E.D. Mich. 1987); *Cuoco v. Nynex, Inc.*, 772 F.Supp. 884, 887 (D.Mass. 1989).  In the case of *Morningstar v. Meijer, Inc.*, 662 F.Supp. 555 (E.D. Mich. 1987), the trial court determined that there was no ERISA preemption as the plaintiff who had filed a claim for a breach of an employment contract against an employer was not seeking to recover lost employee benefits but rather to recover the value of plaintiff's lost employment which included loss of benefits.  Similarly, Plaintiff Zipperer seeks to recover not merely the value of his pension benefits as estimated originally by the Raytheon Benefit Center, but rather the value of the loss of his employment that he relinquished in reliance upon the erroneous value of his pension benefits.

Similarly, in *Cuoco v. Nynex, Inc.*, the Plaintiff Joanne Cuoco had been married to Edward Cuoco, a Nynex employee, for over 15 years when they were divorced in 1984. *Cuoco v. Nynex, Inc.*, 772 F.Supp. 884, 887 (D.Mass. 1989). As part of the divorce decree, Edward was required to pay premiums due and maintain in full force health benefits for his wife. *Id.* Edward then remarried and designed his new wife and the children of his marriage to the plaintiff as beneficiaries under his policy but did not list the plaintiff. *Id.* By apparent clerical error, the plaintiff continued to receive benefits until sometime in 1987. *Id.* At that time, plaintiff was informed that she was no longer covered. *Id.* She went back to probate court alleging that Edward had violated the terms of the divorce decree. *Id.* After serving a subpoena to Nynex, plaintiff's attorney received documents from Nynex advising Joanne's attorney that she was actually still covered under the plan. *Id.* In reliance upon this statement, Joanne withdrew her contempt complaint. *Id.* Soon thereafter Edward passed away. *Id.* Joanne then received notice from Nynex that her benefits coverage was indeed the result of a clerical error and that they would be terminated. *Id.* Plaintiff commenced an action against Nynex in the Federal District Court for the District of Massachusetts. The trial court for the District of Massachusetts determined that there was no ERISA preemption as plaintiff's claims arose not from the deprivation of any rights under the Nynex benefit plan but were based upon a series of promises and representations by the defendant. *Id.* The trial court determined she had a colorable claim in that she reasonably relied upon the defendant's statements in foregoing the contempt action against her ex-husband. *Id.* Such reliance she alleged was to her detriment as her husband died leaving her with no further recourse against him for the violation of the divorce decree. *Id.* "When the resolution of state law

retirement benefits because of Raytheon's negligence in maintaining his employment and personnel records.   Plaintiff has alleged the traditional elements of negligence including duty, breach, causation and damages.  Defendant does not challenge the existence of such elements in Plaintiff's claim.  Instead, Defendant incorrectly argues that Plaintiff's claim for negligence "can only be evaluated with reference to the Plain to determine whether the estimate was incorrect." (Memorandum In Support Of Defendant's Motion For Judgment On The Pleadings, p. 6).  In fact, there is no need for any analysis of Raytheon's plan to determine whether the estimate was incorrect.  Raytheon, itself, informed Zipperer that he was receiving an incorrect amount of monthly retirement benefits.  Accordingly, the maintenance of this claim will involve no inquiry into the terms or interpretation of the plan.  Rather, Zipperer contends that the negligence, on the part of Raytheon, had nothing whatsoever to do with the plan, but was the product of negligent recordkeeping.   In the instant case, Zipperer has asserted a colorable negligence claim that is not preempted by ERISA.  Accordingly, this Court should deny Defendant Raytheon's motion for judgment on the pleadings in its favor as to Plaintiff's claim for negligence.

### 2.    Plaintiff Emory Zipperer Has A Colorable Claim For Equitable Estoppel Against Defendant Raytheon.

The First Circuit Court of Appeals has indicated that an equitable estoppel claim may be permitted despite ERISA's preemption. *Mauser v. Raytheon Company Pension Plan For Salaried Employees*, 239 F.3d 51, 57 (1st Cir. 2001).  Moreover, the Supreme Court of the United States has made clear that despite ERISA's preemption in many claims involving pension plans, "federal courts may engage in interstitial rule-making when it is in the interests of justice." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S.

101, 110 (1989). Moreover, "Federal courts possess the authority…to develop a body of federal common law to govern issues in ERISA actions not covered by the act itself." *Kane v. Aetna Life Insurance*, 893 F.2d 1283 (11th Cir. 1990), quoting *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549 (1987).

To set forth a claim for equitable estoppel, a plaintiff must establish that (1) the defendant made a misrepresentation of fact to another person having reason to believe that the other party will rely upon it; and (2) the plaintiff must have reasonably relied upon the misrepresentation to his detriment. *Mauser v. Raytheon*, 239 F.3d at 57. Plaintiff Zipperer has alleged both of these elements in his Complaint. Defendant's contention that Zipperer's reliance upon the information furnished to him by Raytheon was unreasonable involves disputed issues of material fact, and, precludes this Court from rendering judgment on the pleadings as to Zipperer's claim for equitable estoppel. This Court, therefore, should deny Raytheon's motion for judgment on the pleadings in its favor as to Zipperer's claim for equitable estoppel.

### 3.    Plaintiff Emory Zipperer Has A Colorable Claim Of Negligent Misrepresentation Against Defendant Raytheon.

Plaintiff Emory Zipperer has a colorable common law claim against Raytheon for negligent misrepresentation. To prevail on a claim for negligent misrepresentation, a plaintiff must show that the defendant (1) in the course of its business; (2) supplied false information; (3) to guide another person; (4) causing and resulting in pecuniary loss to another; (5) who justifiably relied upon the information; (6) when the Defendant failed to exercise reasonable care or competence in obtaining or communicating the information. *Nota Constr. Corp. v. Keyes Assoc. Inc.*, 45 Mass.App.Ct. 15, 19-20 (1999); Restatement (Second) of Torts, § 552.

In the instant case, it is undisputed that Raytheon, in the course of its business, provided false information to Zipperer concerning his retirement benefits. It is also not disputed that such advice was given to guide Zipperer and that the subject incorrect information caused him to retire early and forego his salary. The only questions that remain relate to whether Zipperer justifiably relied upon the information and whether Raytheon failed to use reasonable care in obtaining it and communicating it to Raytheon Benefits Center and to Zipperer. These questions are questions of fact.

It is still an open question whether ERISA preempts claims of misrepresentation regarding the existence or scope of employee benefits and "'there is ample well reasoned authority which would support either position.'" *Carlo v. Reed Rolled Thread Die Company*, 49 F.3d. 790, 793 (1st Cir. 1995) (citations omitted). It has been held that "the mere fortuity that the misrepresentation involved pension benefits is insufficient to cause the 'axe of federal preemption to fall.'" *Id.*, quoting *Greenblatt v. Budd Co.* 666 F.Supp. 735, 742 (E.D.Pa. 1987).

The Defendant's reliance on *Carlo* is misplaced. In *Carlo v. Reed Rolled Thread Die Company*, the First Circuit Court of Appeals deemed that ERISA preemption applied to a plaintiff's claims for misrepresentation because Carlo's damages for the alleged misrepresentation would consist partly of the extra pension benefits that had been promised him. *Carlo*, 49 F.3d. at 794. In other words, because the court would need to consider the terms of the defendant's early retirement benefit plan to determine the defendant's damages, ERISA preempted the claim. To the contrary, in the present case, Zipperer is not claiming damages consisting of his promised pension benefits. Instead, Zipperer claims that he would not have retired from his position at WGI had he known

13

the true amount of his Raytheon pension, and therefore, claims his lost wages from his employment at WGI. Accordingly, Zipperer's claim has no relation whatsoever to the Raytheon pension plan and, therefore, is not preempted by ERISA.

Additionally, in *Carlo*, the First Circuit of Appeals suggested that its decision that ERISA preempted plaintiff's negligent misrepresentation claim was due in part to the fact that he had potential recourse as the defendant offered him his job back after the calculation error was discovered. *Carlo*, 49 F.3d at 795, f.n. 5. In other words, the plaintiff was not without a remedy and could have mitigated his damages by accepting reemployment. On the contrary, in the instant case, if this Court deems that that Zipperer's claim for negligent misrepresentation is preempted, he will be left without a remedy. Accordingly, this Court should deny Defendant's motion for judgment on the pleadings in its favor as to Zipperer's claim for negligent misrepresentation.

## Conclusion

For the reasons set forth above, this Court should deny Defendant Raytheon

Company, Inc.'s Motion For Judgment On The Pleadings.

EMORY ZIPPERER
By his attorney,

Joseph P. Dever
B.B.O. No. 564237
Theresa Finn Dever
B.B.O. No. 564319
RILEY & DEVER, P.C.
Lynnfield Woods Office Park
210 Broadway, Suite 101
Lynnfield, MA 01940-2351
(781) 581-9880

Dated: March 15, 2005

## CERTIFICATE OF SERVICE

I, Joseph P. Dever, hereby certify that on March 15, 2005, I sent a copy of the
Plaintiff Emory Zipperer's Opposition To Defendant's Motion For Judgment On The
Pleadings by first class mail to Constance M. McGrane, Esq., counsel for Raytheon
Company, at Conn Kavanaugh Rosenthal Peisch & Ford, LLP, Ten Post Office Square,
Boston, Massachusetts 02109.

Joseph P. Dever