UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EMORY ZIPPERER,
        Plaintiff,


        v.                                    CIVIL ACTION NO.
                                              03-12379-MLW

RAYTHEON COMPANY, INC.,
        Defendant.


**REPORT AND RECOMMENDATION RE:**
**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**
**(DOCKET ENTRY # 17)**


**July 6, 2005**


**BOWLER, U.S.M.J.**

Pending before this court is a motion for judgment on the
pleadings filed by defendant Raytheon Company, Inc. ("Raytheon")
under Rule 12(c), Fed. R. Civ. P. ("Rule 12(c)").  (Docket Entry
# 17).  Plaintiff Emory Zipperer ("Zipperer"), a retired Raytheon
employee, opposes the motion.  (Docket Entry # 20).  After
conducting a hearing, this court took the motion (Docket Entry #
17) under advisement.


PROCEDURAL BACKGROUND

Plaintiff originally filed this action in the Massachusetts
Superior Court Department (Middlesex County).  Thereafter,
Raytheon filed a timely notice removing this case to the United
States District Court for the District of Massachusetts.

Zipperer's three count complaint seeks redress against

Raytheon stemming from an incorrect estimate of expected
retirement income that Zipperer would receive under The Raytheon
Engineers and Constructors, Inc. Retirement Plan ("the Plan").
Relying on the estimate of expected retirement income, Zipperer
and his wife Mary Zipperer, chose to retire.  The estimate proved
erroneous.

The complaint alleges causes of action under state law for
negligence (Count I), equitable estoppel (Count II) and negligent
misrepresentation (Count III).  Raytheon submits that the
Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et
seq. ("ERISA"), preempts all three causes of action.


STANDARD OF REVIEW

In reviewing the pleadings, this court accepts "all of the
non-moving party's well-pleaded factual averments as true and
draws all reasonable inferences in [its] favor."  Feliciano v.
State of Rhode Island, 160 F.3d 780, 788 (1st Cir. 1998).
Judgment on the pleadings is not permissible "unless it appears
beyond a doubt that the nonmoving party can prove no set of facts
in support of [its] claim which would entitle [it] to relief."
Feliciano v. State of Rhode Island, 160 F.3d at 788; accord
Santiago v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991).
"Thus, under Rule 12(c), courts need not credit conclusory
statements or merely subjective characterizations, but rather
plaintiffs must set forth in their complaint specific,

2

nonconclusory factual allegations regarding each material element
necessary to sustain recovery." <u>Class v. Commonwealth of Puerto
Rico</u>, 309 F.Supp.2d 235, 236 (D.P.R. 2004).

Rule 12(c), however, only permits a judgment based on the
pleadings.  <u>Northern Indiana Gun & Outdoor Shows, Inc. v. City of
South Bend</u>, 163 F.3d 449, 452 (7th Cir. 1998).  "Pleadings"
includes the complaint, the answer and "any written instruments
attached as exhibits."  <u>Northern Indiana Gun & Outdoor Shows,
Inc. v. City of South Bend</u>, 163 F.3d at 452.  With few
exceptions, consideration of other documents is improper absent
conversion of the Rule 12(c) motion into a motion for summary
judgment.  As central documents referred to in the complaint, the
Plan as well as the December 27, 1999 request for retirement
calculations (Docket Entry # 1, ¶ 17) fall within these limited
exceptions.[1]  <u>See Alternative Energy v. St. Paul Fire and Marine</u>,
267 F.3d 30, 33-34 (1st Cir. 2001) (setting forth exceptions).
Applying this standard, the facts are as follows.

---

[1]  The complaint does not refer to an October 6, 2000
estimate of benefits which Raytheon attaches to an affidavit in
support of the Rule 12(c) motion.  Inasmuch as the document is
not central to the complaint and does not otherwise fall within
the reach of an exception, it is not considered.  <u>See</u>, <u>e.g.</u>,
<u>Pledger v. North Carolina Department of Health and Human
Services</u>, 7 F.Supp.2d 705, 707-708 (E.D.N.C. 1998) (refusing to
consider documents attached to memorandum in the course of ruling
on a Rule 12(c) motion).  It is also improper to consider
paragraph eight of the affidavit of Evans W. Cheeseman, Jr.,
wherein he asseverates that "Zipperer is currently receiving the
correct amount of pension benefits due to him under the [Plan]."
(Docket Entry # 20, Att. 2).

## FACTUAL BACKGROUND

On November 20, 1972, Zipperer began working for United
Engineers & Constructors, Inc. ("UE & C"), a wholly owned
subsidiary of Raytheon, as a field engineer in the nuclear power
division.  On January 1, 1975, Zipperer began participating in UE
& C's retirement plan.

On November 2, 1990, Zipperer began working at another
Raytheon subsidiary, Raytheon Services, Nevada ("RSN").  Raytheon
created RSN solely for the purpose of administering work for the
United States Department of Energy ("DOE"), Nevada Operations.
At RSN, Zipperer participated in atomic testing and chemical
weapons disposal programs.  Zipperer, however, remained a
Raytheon employee and no monies were transferred from the UE & C
retirement plan to the RSN pension plan.  The Raytheon Benefit
Center administered both plans and adjusted Zipperer's service
date for the RSN pension plan to reflect and include his prior
service at UE & C.

On October 4, 1993, Zipperer separated from his employment
at RSN.  On November 29, 1993, Raytheon Engineers & Constructors,
Inc. ("RE & C"), a successor to UE & C, hired Zipperer.  RE & C
credited Zipperer with his prior years of service at UE & C for
the purpose of calculating his pension benefits.

On December 30, 1995, Bechtel Nevada replaced RSN as a
contractor for the DOE.  As of that date, RSN's pension trust
funds were transferred to the Bechtel Nevada Employee Retirement

4

Plan, according to the Raytheon Benefit Center.  Raytheon and RSN did not notify RE & C that Zipperer's vested RSN benefit, which included the prior UE & C benefit, was being transferred to Bechtel Nevada.  None of the Raytheon pension plans was amended to reflect the transfer of assets to Bechtel Nevada.  Consequently, Raytheon reported this overstated and incorrect benefit to Washington Group International ("WGI"), the company that later purchased RE & C in July 2000.

On December 27, 1999, Zipperer completed a request for retirement calculations and submitted it to RE & C's pension administration department.  The one page form states in large type, "If you would like calculations showing your estimated retirement income from our Retirement Plan, please complete this form."  (Docket Entry # 20, Att. 2, Ex. B).  Zipperer checked the spaces regarding "Prior Service" applicable to UE & C and "Raytheon Company(s)" and requested calculations of his retirement income for the estimated retirement dates of April 1, 2000, and April 1, 2001.  (Docket Entry # 20, Att. 2, Ex. B).

On February 16, 2000, RE & C printed out and sent Zipperer a computation of retirement benefits.  The computation noted that Zipperer could expect to receive a monthly benefit of $1,100.17 if he chose the single life annuity option with no rights of survivorship, a monthly benefit of $1,063.11 if he chose the ten year certain and continuous option and a monthly benefit of $980.55 if he chose the joint and survivor annuity option.

On July 7, 2000, RE & C was sold to WGI.  Relying upon the
February 16, 2000 information from the RE & C Pension
Administrator, Zipperer, as well as his wife, decided to retire.
On September 30, 2000, Zipperer retired from WGI at the age of
56.  At the time, he earned an annual salary of $107,484 as
Project Controls Manager for WGI.

Shortly after retiring, Zipperer began receiving monthly
retirement checks from Raytheon in the amount of only $840.64.
In June 2001, the Raytheon Benefit Center advised Zipperer by
letter that his pension benefits had been overstated and that he
was entitled to receive a monthly benefit of only $400.06.
Zipperer appealed the decision internally without avail and has
exhausted internal appeal procedures.

The Plan provides retirement and disability retirement
benefits to eligible Raytheon employees.  It is administered by a
Retirement Committee consisting of at least three individuals
appointed by the Board of Directors of RE & C.  The committee
serves "at the pleasure of the Directors."  (Docket Entry # 20,
Att. 2, Ex. A, ¶ 5.2).  Under the terms of the Plan:

> The Committee shall interpret [the] Plan and the meaning and
> intent of all terms and provisions hereof, shall remedy any
> ambiguities or omissions therein, and shall determine any
> and all questions arising in the application of the
> provisions of the Plan in such manner and upon such basis as
> the Committee shall in its absolute discretion deem to be
> proper and fair and equitable under the circumstances.  The
> Committee shall exercise such authority and responsibility
> as it deems appropriate in order to comply with ERISA.  The
> Committee's interpretations and determinations made in good
> faith shall be conclusive and binding on all parties except

6

as otherwise determined by the Directors.
(Docket Entry # 20, Att. 2, Ex. A, ¶ 5.5).  The terms of the Plan also require the Committee to "keep appropriate records of the operation of the Plan."  (Docket Entry # 20, Att. 2, Ex. A, ¶ 5.3).

Inasmuch as the Rule 12(c) motion asserts that ERISA preempts each cause of action, it is worth examining the substantive allegations of each of the three counts in the complaint.  In Count I, Zipperer alleges that Raytheon breached its duty "to properly maintain records and information concerning his retirement plan."  (Docket Entry # 1, ¶ 27).  The count additionally complains of Raytheon's failure to maintain proper employment records.  As a result, the Raytheon Benefit Center furnished Zipperer "with incorrect information concerning the amount of his monthly retirement benefits."  (Docket Entry # 1, ¶ 30).  The count further alleges that Zipperer suffered damages in the form of "lost wages" and "lost benefits."  (Docket Entry # 1, ¶ 32).

In Count II, the complaint alleges that Zipperer relied on the incorrect information "concerning the amount of Zipperer's monthly pension benefits" to his detriment by giving up his job as well as his home and deciding to travel.[2]  (Docket Entry # 1,

---

[2]  Elsewhere, the complaint states that Zipperer, as well as his wife, decided "to retire, purchase a motor coach and travel throughout the United States."  (Docket Entry # 1, ¶ 20).

7

¶¶ 35 & 37).  In Count III, Zipperer complains that Raytheon did
not exercise reasonable care in providing the information to him
"concerning the amount of his pension benefit upon retirement."
(Docket Entry # 1, ¶ 41).  Zipperer then reasonably relied upon
the false information and, as a result of the negligent
misrepresentation, Zipperer "suffered damage including his
present lost wages, lost benefits, future income and attorneys'
fees and costs."  (Docket Entry # 1, ¶ 44).


## DISCUSSION

Section 514(a) of ERISA broadly and expansively provides
that the statute "shall supersede any and all State laws insofar
as they may now or hereafter relate to any employee benefit
plan." 29 U.S.C. § 1144(a); accord Hotz v. Blue Cross and Blue
Shield of Massachusetts, 292 F.3d 57, 60 (1st Cir. 2002) (section
1144(a) "has been applied widely to bar state claims seeking
damages for alleged breach of obligations pertaining to an ERISA
plan"); Mauser v. Raytheon Company Pension Plan for Salaried
Employees, 239 F.3d 51, 57 (1st Cir. 2001) (describing section
514(a) as "expansive").  As interpreted by the Supreme Court, a
state law "relates to" an employee benefit plan "in the normal
sense of the phrase, if it has a connection with or reference to
such a plan."[3]  Shaw v. Delta Air Lines, 463 U.S. 85, 96 (1983).

---

[3] The parties correctly do not dispute that the Plan is an
employee pension benefit plan within the meaning of ERISA.  See

8

Because of the "unworkability of a literal reading" of the
"'relate to' standard," courts should look "to the objectives of
the ERISA statute as a guide" in measuring the scope of
preemption.  <u>Hampers v. W.R. Grace & Company, Inc.</u>, 202 F.3d 44,
51 (1st Cir. 2000) (citing <u>New York State Conference of Blue
Cross and Blue Shield Plans v. Travelers Insurance Company</u>, 514
U.S. 645, 656-58 (1995)); <u>New Hampshire Motor Transport
Association v. Rowe</u>, 2005 WL 1319540 at * 5 n. 59 (D.Me. May 27,
2005) ("courts should consider the objectives of the ERISA
statute rather than look to 'infinite relations' or 'infinite
connections' to measure preemption").

ERISA's objectives include the goal of providing a "uniform
national administration of ERISA plans" and avoiding inconsistent
state regulation of such plans.  <u>Danca v. Private Health Care
Systems, Inc.</u>, 185 F.3d 1, 7 (1st Cir. 1999).  Here, the conduct
at issue in the state causes of actions involves a calculation,
albeit erroneous, of retirement benefits under an ERISA plan.
Allowing a cause of action to proceed for the negligence in
making the representation or the negligence in maintaining and
transferring the pertinent records amounts to an alternative
enforcement mechanism to enforce (or estop the employer from
denying) extra-contractual benefits.  Such claims inevitably and
directly conflict with the carefully chosen and carefully limited

---

29 U.S.C. § 1002(2)(A).

remedies provided under ERISA.  See <u>Aetna Health, Inc. v. Davila</u>, 542 U.S. 200, 124 S.Ct. 2488, 2499 & n. 4 (2004) ("limited remedies available under ERISA are an inherent part of the 'careful balancing' between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans"); <u>Pilot Life Insurance Company v. Dedeaux</u>, 481 U.S. 41, 54 (1987).

Regardless of the label of the state law claims, in essence they seek extra-contractual benefits not authorized by the terms of the Plan.  Such an end run around the carefully crafted benefits Raytheon chose to provide and fund amounts to an attempt to authorize remedies beyond those provided by the Plan.  <u>See generally</u> <u>Aetna Health, Inc. v. Davila</u>, 124 S.Ct. at 2498-2499; <u>Carlo v. Reed Rolled Thread Die Company</u>, 49 F.3d 790, 794 n. 3 (1st Cir. 1995).

The fact that neither party disputes the terms of the Plan does not preclude a finding of preemption.  It is only by virtue of the Raytheon Benefit Center's February 2000 calculation and its administration of the Plan that Zipperer maintains there was a misrepresentation.  <u>See Hampers v. W.R. Grace & Company, Inc.</u>, 202 F.3d at 53 (finding preemption and reasoning that "it is only by virtue of Grace's status as an ERISA employer with direct control over the administration and operation of the NMC SERP that Grace could have breached the 1991 Agreement in the way Hampers insists that it did"); <u>see also Aetna Health, Inc. v.</u>

<u>Davila</u>, 124 S.Ct. at 2496 (although discussing complete preemption in the context of jurisdiction, nonetheless noting that "the only relationship Aetna had with Davila was its partial administration of Davila's employer's benefit plan").

Finally, whether framed as seeking or not seeking damages for lost benefits or as seeking damages only in the form of present lost wages for the employment Zipperer relinquished in reliance on the misrepresentation, the conduct at issue has a "connection with" the ERISA Plan and inevitably relates to the Plan. Simply put, it involves an erroneous calculation of future retirement benefits under an ERISA plan which the terms of the Plan apparently do not encompass. Section 514(a) of ERISA preempts the state law claims even if ERISA's enforcement mechanisms do not provide the remedy Zipperer seeks of present lost wages. <u>See</u> <u>generally</u> <u>Pilot Life Insurance Company v.</u> <u>Dedeaux</u>, 481 U.S. at 54-55.

If there was any doubt regarding the preemption of all three of the state law causes of action, First Circuit law forecloses any such doubt. Where, as here, the plaintiff attempts to craft state law causes of action for erroneous statements regarding expected future retirement benefits under an ERISA plan, two First Circuit decisions uniformly conclude that section 514(a) precludes the state law claims concerning the misrepresentations about the plan. <u>See</u> <u>Degnan v. Publicker Industries, Inc.</u>, 83 F.3d 27 (1st Cir. 1996) (affirming dismissal of common law

misrepresentation claim as preempted where claim alleged that
employer induced the plaintiff to retire by promising to revise
retirement plan to make the plaintiff eligible and then reneging
on the promise after three years); Carlo v. Reed Rolled Thread
Die Company, 49 F.3d 790 (1st Cir. 1995) (affirming Rule 12(b)(6)
dismissal of state law claims, including negligent
misrepresentation, as preempted where the employer erroneously
certified monthly retirement benefits that later proved incorrect
under terms of the plan).  Indeed, the personnel manager in Carlo
indicated that the expected monthly "figures had been certified,"
Carlo v. Reed Rolled Thread Die Company, 49 F.3d at 792, whereas
the monthly retirement figures provided to Zipperer were only
"estimated retirement income" (Docket Entry # 20, Att. 2, Ex.
B).[4]  Like Zipperer, Carlo relied on the statement regarding
expected future benefits and opted for early retirement.
Although the decision left Carlo without a remedy, the First
Circuit concluded that the claims related to an employee benefit
plan.  Carlo and Degnan are directly on point and mandate a
finding of preemption for the three state law causes of action.

        Given the foregoing First Circuit law, Zipperer's reliance
on a district court decision in the Eastern District of Michigan,
Morningstar v. Meijer, Inc., 662 F.Supp. 555 (E.D.Mich. 1987),

---

        [4]  That said, this court's recommendation to allow the
motion (Docket Entry # 17) would remain the same even if this
court considered the estimate a certification of benefits.

and a 1989 district court decision in this district that predates
both Carlo and Degnan, Cuoco v. Nynex, Inc., 722 F.Supp. 884
(D.Mass. 1989), is misplaced.  In any event, neither case is
factually on point.  Morningstar is distinguishable on the basis
that it involved the breach of an employment contract, an
allegation absent from the case at bar.  Cuoco involved a series
of promises as opposed to the single estimate at issue in this
action.  It also involved a dispute over coverage under an ERISA
plan for a divorced spouse of a former employee as opposed to a
miscalculation of retirement benefits owed to a covered
individual.  In contrast, Zipperer is entitled to benefits under
the plan and seeks remedies grounded on a promise for additional
benefits.  There is, therefore, a far closer "'closer connection
with,'" Carlo v. Reed Rolled Thread Die Company, 49 F.3d at 793,
an ERISA plan than the connection at issue in Cuoco.

Furthermore, a number of courts outside the First Circuit
consider breach of contract claims based upon erroneous
statements regarding future retirement benefits preempted.  See
Dranchuk v. Akzo Nobel, Inc., 88 F.3d 457, 459-460 (7th Cir.
1996) (breach of contract claim regarding letter agreements
promising extra pension credits in the event of early retirement
preempted); Anderson v. John Morrell and Company, 830 F.2d 872
(8th Cir. 1987) (breach of contract claim regarding extra-
contractual plan benefits preempted).

As a final matter, Raytheon's motion seeks to deny Zipperer

13

the opportunity to reframe the complaint as an action under ERISA and/or its evolving equitable estoppel doctrine.  The request is premature.  Zipperer has not yet attempted to reframe the complaint as alleging a cause of action under ERISA.  Although Zipperer faces a difficult task, see Slice v. Sons of Norway, 34 F.3d 630 (8th Cir. 1994) (rejecting similar claims), this court lacks the benefit of examining such a complaint.  Thus, like the opportunity afforded by the court in Degnan and for similar reasons,[5] this court will allow Zipperer a limited opportunity to seek leave to file an amended complaint raising one or more causes of action under ERISA, if he so chooses.

CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[6] that the motion for judgment on the pleadings (Docket

---

[5]  As explained by the court in Degnan,

At this juncture, we simply cannot tell.  Because the plaintiff has not yet tried to plead [an ERISA claim], we do not know how well the shoe fits, or if it fits at all. Rather than guessing at what facts the plaintiff conceivably could allege in an amended complaint, we think that the course of prudence is to give the plaintiff an opportunity to supplement his factual allegations with whatever additional averments he believes would buttress [such an ERISA claim].

Degnan v. Publicker Industries, Inc., 83 F.3d at 30.

[6]  Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  Any party may respond to another

Entry # 17) be **ALLOWED** with the caveat of allowing Zipperer 30 days from the date of this opinion to file a motion for leave to file an amended complaint raising one or more causes of action under ERISA.

/s/Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

party's objections within ten days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.  <u>United States v. Escoboza Vega</u>, 678 F.2d 378-379 (1st Cir. 1982); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).